**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| LEE P. ROSKY,<br><br>               Plaintiff,<br><br>    -v-<br><br>TODD S. FARHA, REGINA E. HERZLINGER, KEVIN F. HICKEY, ALIF A. HOURANI, RUBEN JOSE KING-SHAW, JR., CHRISTIAN P. MICHALIK and NEAL MOSZKOWSKI,<br><br>               Defendants,<br>    -and-<br><br>WELLCARE HEALTH PLANS, INC.,<br><br>             Nominal Defendant. | No. _____<br><br><br>**SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS AND UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff brings this action derivatively on behalf of nominal defendant, WellCare Health Plans, Inc., ("WellCare" or the "Company") and alleges upon personal knowledge as to his own acts, and as to all other matters upon information and belief as follows:

**NATURE OF THE ACTION**

1.     This is a shareholder derivative action brought by a shareholder of WellCare, on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment and that have caused substantial losses to WellCare and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000.  This action is not a collusive one to confer jurisdiction on this Court that it would not otherwise have.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with Florida so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in the Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to WellCare occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District..

## THE PARTIES

5.      Plaintiff Lee P. Rosky ("Rosky") is and was at all relevant times a shareholder of WellCare.  Rosky is a citizen of Maryland.

6.      Nominal defendant WellCare provides managed care services exclusively to government-sponsored healthcare programs, focusing on Medicaid and Medicare.

WellCare's principal executive offices are located at 8725 Henderson Road, Renaissance One, Tampa, Florida 33634.  WellCare common stock is publicly traded on the New York Stock Exchange under the symbol "WCG."

7.      Defendant Todd S. Farha ("Farha") has been WellCare's President and Chief Executive Officer and a directors of the Company since May 2002.  Farha was also named Chairman of the board in October 2006.  Farha is a citizen of Florida.

8.      Defendant Regina E. Herzlinger ("Herzlinger") has been a director of WellCare since August 2003.  Herzlinger is Chairman of the Company's Audit Committee.  Herzlinger is a citizen of Massachusetts.

9.      Defendant Kevin F. Hickey ("Hickey") has been a director of WellCare since November 2002.  Hickey is a member of the Company's Compensation Committee. Hickey is a citizen of Massachusetts.

10.      Defendant Alif A. Hourani ("Hourani") has been a director of WellCare since August 2003.  Hourani is a member of each of the Company's standing board committees: the Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee.  Hourani and Farha are cousins.  Hourani is a citizen of Kansas.

11.      Defendant Ruben Jose King-Shaw, Jr. ("King-Shaw") has been a director of WellCare since August 2003.  King-Shaw is a citizen of Massachusetts.

12.      Defendant Christian P. Michalik ("Michalik") has been a director of WellCare since May 2002.  Michalik is a member of the Company's Audit Committee and Nominating and Corporate Governance Committee.  Michalik is a citizen of New York.

13.     Defendant Neal Moszkowski ("Moszkowski") has been a director of WellCare since May 2002.  Moszkowski was Chairman of the Board from May 2002 through October 2006.  Moszkowski is the board's designated "Presiding Director" to preside over executive sessions of non-management directors.  Moszkowski is Chairman of the Company's Compensation Committee and Chairman of the Company's Nominating and Corporate Governance Committee.  Moszkowski is a citizen of New York.

14.     Defendants Farha, Herzlinger, Hickey, Hourani, King-Shaw, Michalik, Moszkowski (the "Individual Defendants"), together with D. Robert Graham ("Graham"), comprise WellCare's board of directors.  Graham joined the board in April 2007 and does not serve on any board committees.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

15.     By reason of their positions as officers and/or directors and fiduciaries of WellCare and because of their ability to control the business and corporate affairs of WellCare, the Individual Defendants owed WellCare and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage WellCare in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of WellCare and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

16.     Each director and officer of the Company owes to WellCare and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets,

and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

17.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of WellCare, directly and/or indirectly exercised control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with WellCare, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of WellCare.

18.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of WellCare, and was at all times acting within the course and scope of such agency.

19.    To discharge their duties, the officers and directors of WellCare were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of WellCare were required to, among other things:

a.    refrain from acting upon material inside corporate information to benefit themselves;

5

b.     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

c.     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

d.     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

e.     remain informed as to how WellCare conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and,

f.     ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

20.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and

administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of WellCare, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

21.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct, the Company is now the subject of several class action lawsuits that allege violations of federal securities laws.  As a result, WellCare has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

a.     costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and,

b.     costs incurred in investigating and defending WellCare and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

22.     Moreover, these actions have irreparably damaged WellCare's corporate image and goodwill.  For at least the foreseeable future, WellCare will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that

WellCare's ability to raise equity capital or debt on favorable terms in the future is now impaired.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

23.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.   In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

24.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at WellCare and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of WellCare, regarding the Individual Defendants' management of WellCare's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants.   In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

25.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least February 1, 2005 and

continuing thereafter.  During this time the Individual Defendants caused the Company to conceal the true fact that WellCare was misrepresenting its financial results.  In addition, defendants also made other specific, false statements about WellCare's financial performance and future business prospects, as alleged herein.

26.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of WellCare common stock so they could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

27.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results.  Because the actions described herein occurred under the authority of the board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

28.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially

assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

### THE INDIVIDUAL DEFENDANTS SUBJECT WELLCARE TO MULTIPLE STATE AND FEDERAL, CIVIL AND CRIMINAL INVESTIGATIONS, TO HARM OF WELLCARE

29.    WellCare provides managed care services exclusively to government-sponsored healthcare programs, focusing on Medicaid and Medicare.  Medicare is the federal health program for the elderly and disabled; Medicaid is a state and federal health program for the poor.  By offering managed-care alternatives to traditional Medicare and Medicaid benefits, WellCare acts as a middleman between government payers and health-care providers.

30.    One of WellCare's biggest markets is Florida, where it manages care for 356,062 Florida Medicaid beneficiaries, or more than a third of the program's managed-care enrollment.  WellCare's Medicaid business in Florida generates up to one-fourth of the Company's earnings.

31.    On October 24, 2007, WellCare's principal executive offices were raided by approximately 200 federal and state agents.  The agencies conducting the raid included the FBI, the U.S. Department of Heath and Human Services Office of the Inspector General, and the Florida attorney general's Medicaid Fraud Control unit. Investigators seized Blackberrys, computers and files from corporate, marketing and human resources offices, and employees were told to make copies of their identification cards and tape the card to their desks.  The NYSE halted trading in WellCare common stock, which had last traded at $115.50 per share.

32.     Commenting on the unusual nature of the raid, Wachovia Capital Markets analyst Matt Perry noted that the search was specific to WellCare and it did not appear other health care companies are being investigated: "The managed care and pharmacy benefit management sectors that we cover are no strangers to government investigations… However we can't recall any of these past issues involving an FBI-related search."

33.     When trading in WellCare common stock resumed on October 25, 2007, the shares plunged by 63 percent, dropping $72.50 per share to close at $42.67 per share. The drop wiped out nearly $3 billion in market value (from $4.8 billion to $1.8 billion), inflicting enormous damage on the Company.

34.     WellCare shares fell further on Friday, October 26, 2007, after the Connecticut Attorney General confirmed a separate investigation of WellCare's practices in Connecticut, which investigation was well underway prior to the FBI/Florida Attorney General raid on October 23, 3007.  WellCare stock dropped another $11.31 per share to close at $31.36 per share.

35.     Defendants have refused to provide details of the raid, the search warrant, or the investigation, but have confirmed that the government actions involved areas under the supervision of the Company's Audit Committee (comprised of Herzlinger, Hourani and Michalik), and, indeed, WellCare later disclosed on October 26, 2007 that the SEC had also directed information requests to the Company.

36.     Although defendants have publicly stated their cooperation with the investigations, their actions have not met their public proclamations.  For instance, on October 26, 2007, the Individual Defendants announced that they had formed a "Special

Committee" in response to the investigation.   However, rather than appoint some independent representative of the Company to help protect the Company's interests, the Individual Defendants loaded the Special Committee with existing directors that suffer from disabling conflicts and cannot act with undivided loyalty to WellCare.  The Special Committee is comprised of Moszkowski, Michalik and King-Shaw, members who are conflicted for several reasons.  First, King-Shaw engaged in unusual insider selling just prior to the raids, unloading 5,000 shares on August 3, 2007 at prices ranging from $105 to $105.33 per share, generating proceeds of approximately $526,000.  These were King-Shaw's first non-option related sales (*i.e.*, a sale tied to an option exercise purchase) in over a year.  Michalik, as a member of the Audit Committee, is directly implicated in any failure in the Company's financial reporting function, and areas of the Audit Committee's responsibility have specifically been identified as a subject of the investigation.  Notably, the Audit Committee is responsible for oversight of the Company's corporate ethics and compliance program, in addition to oversight of the integrity of the Company's financial statements.

37.     King-Shaw was joined in unusual insider selling by many of the Individual Defendants and other members of WellCare management.  Chief Executive Officer Farha, for instance, sold $8.8 million of shares since July 2007, while General Counsel Thaddeus Bereday has sold $4.2 million, and Chief Financial Officer Paul Behrens has sold $2.1 million of stock.  Between August 28, 2007 and August 31, 2007, Herzlinger sold 24,000 shares of WellCare common stock at prices ranging from $95.50 to $95.80 per share, generating proceedings of over $2.3 million.   These were Herzlinger's first insider transactions in two years.  Hickey sold 4,000 shares on August

14, 2007 at prices ranging from $98.17 to $98.53 per share, generating proceeds of approximately $393,000.

<u>**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**</u>

38.     Plaintiff brings this action derivatively in the right and for the benefit of WellCare to redress injuries suffered, and to be suffered, by WellCare as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  WellCare is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

39.     Plaintiff will adequately and fairly represent the interests of WellCare in enforcing and prosecuting its rights.

40.     Plaintiff was and is the owner of WellCare stock during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

41.     Plaintiff has not made any demand on the present board of WellCare to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

a.     As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and board meetings, each of the defendants knew the adverse non-public information regarding the weaknesses in the Company's

internal controls and the overstatement of deferred tax assets and goodwill resulting therefrom;

b. Defendants Farha, Herzlinger, Hickey, Hourani, King-Shaw, Michalik and Moszkowski are each personally accused of wrongdoing, as each failed to address and correct material weaknesses in the Company's internal controls and financial reporting function. These defendants failed to make certain that WellCare had adequate internal accounting procedures and controls necessary to ensure that the Company complied with all Medicare and Medicaid requirements, and that the Company's financial statements complied with the rules and regulations of the SEC. The WellCare board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are personally interested in the outcome as it is their actions that have subjected WellCare to potential liabilities for its violations of applicable securities laws;

c. The acts complained of constitute violations of the fiduciary duties owed by WellCare's officers and directors and these acts are incapable of ratification;

d. These defendants' actions and inactions are the proximate cause of the restatement from which the Company will face millions of dollars in increased legal and accounting fees and significant damage to the Company's reputation;

e. Each of the Individual Defendants of WellCare authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements

14

and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

     f.     Any suit by the current directors of WellCare to remedy these wrongs would likely expose the Individual Defendants and WellCare to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

     g.     WellCare has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for WellCare any part of the damages WellCare suffered and will suffer thereby;

     h.     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile; and,

     i.     If WellCare's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance,

they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of WellCare. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by WellCare against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of WellCare, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause WellCare to sue them, since they will face a large uninsured liability.

42. Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current board has failed and refused to seek to recover for WellCare for any of the wrongdoing alleged herein.

## COUNT ONE

### Against All Defendants for Breach of Fiduciary Duty

43. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

44. The Individual Defendants owed and continue to owe WellCare fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed

and continue to owe WellCare the highest obligation of good faith, fair dealing, loyalty and due care.

45.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

46.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

47.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, WellCare has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

48.     Plaintiff, on behalf of WellCare, has no adequate remedy at law.

## COUNT TWO

### Against All Defendants for Abuse of Control

49.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence WellCare, for which they are legally responsible.

51.     As a direct and proximate result of the Individual Defendants' abuse of control, WellCare has sustained significant damages.

52.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

53.     Plaintiff, on behalf of WellCare, has no adequate remedy at law.

### COUNT THREE

### Against All Defendants for Gross Mismanagement

54.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of WellCare in a manner consistent with the operations of a publicly held corporation.

56.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, WellCare has sustained significant damages in excess of hundreds of millions of dollars.

57.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

58.     Plaintiff, on behalf of WellCare, has no adequate remedy at law.

### COUNT FOUR

### Against All Defendants for Waste of Corporate Assets

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.     As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused WellCare to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions/billions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

61.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

62.     Plaintiff, on behalf of WellCare, has no adequate remedy at law.

**COUNT FIVE**

**Against All Defendants for Unjust Enrichment**

63.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of WellCare.

65.     Plaintiff, as a shareholder and representative of WellCare, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual

Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of WellCare has an effective remedy;

C.      Awarding to WellCare restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all matters so triable.

## **VERIFICATION**

The undersigned counsel for plaintiff states that the information contained in this Complaint about plaintiff is true upon the signer's personal knowledge.   All other averments are made on information and belief based upon the investigation of counsel, including information from public news sources and discussions in an effort to confirm allegations from those news sources.

S/ JONATHAN L. ALPERT

Dated: October 29, 2007

S/ JONATHAN L. ALPERT
Jonathan L. Alpert
FBN # 0121970
5920 River Terrace
Tampa, Florida 33604
813-230-9915 (phone)
813-228-9612 (fax)
JonAlpert @aol.com

**CALCUTT & CALCUTT, P.A.**
Patrick B. Calcutt
Fla Bar # 869971
165 5th Ave. N.E.
St. Petersburg, Florida 33701
727-821-5681 (phone)
727-823-6353 (fax)
calcuttlaw@tampabay.rr.com

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337
mgardy@gardylaw.com
jnotis@gardylaw.com

*Counsel for Plaintiff*